**STATE OF WEST VIRGINIA**

*In re* **M.B. and P.B.**

**No. 19-0529** (Jackson County 18-JA-31 and 18-JA-34)

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# MEMORANDUM DECISION

Petitioner Father J.B., by counsel Ryan M. Ruth, appeals the Circuit Court of Jackson County's April 26, 2019, order terminating his parental rights to M.B. and P.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, the DHHR filed an abuse and neglect petition against the parents alleging that their substance abuse affected their ability to parent and care for M.B. Specifically, the DHHR alleged that the police investigated a report of an unattended toddler wading in floodwaters, and later located the child's parents asleep inside the home. According to the DHHR, the parents stated that they did not know the location of their child, and the mother appeared both pregnant and under the influence of drugs or alcohol. Further, the petition alleged that the parents had been convicted of drug offenses and were required to submit to regular drug screening. The DHHR learned that petitioner tested positive for amphetamine in March of 2018, and the mother tested positive for methamphetamine in February of 2018.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Thereafter, the circuit court held a contested preliminary hearing and found probable cause to believe that the child, M.B., was in imminent danger due to the parents' lack of supervision and positive drug screens. Also, the circuit court learned that as a result of their positive drug screens, the mother was incarcerated for violating her probation and petitioner was placed on home incarceration for violating his parole. While incarcerated, the mother gave birth to the second child, P.B., who was born drug-exposed. In April of 2018, the DHHR amended the petition to allege that P.B. was abused and neglected and suffered from withdrawal symptoms. The amended petition also alleged that the circuit court in petitioner's criminal matter instructed him to find appropriate inpatient drug treatment prior to his sentencing hearing. A subsequent preliminary hearing ratified the removal of P.B. from the home. Later that month, petitioner participated in a psychological evaluation to determine parental fitness, and the psychologist recommended, at a minimum, that petitioner attend intensive outpatient treatment. As of May of 2018, petitioner had failed to seek inpatient drug treatment as ordered by the circuit court in his criminal matter, resulting in seven months of incarceration.

In June of 2018, the circuit court held an adjudicatory hearing. The parents did not appear, but counsel represented them. The circuit court took judicial notice of testimony presented at the preliminary hearing and adjudicated the parents as abusing parents based upon the lack of supervision of M.B. and the parents' positive drug screens. In November of 2018, the circuit court held a dispositional hearing wherein petitioner did not appear, but counsel represented him. Petitioner's disposition was continued in light of the circuit court's grant of a post-adjudicatory improvement period to the mother.

In January of 2019, petitioner filed a motion for a post-adjudicatory improvement period based upon his release from incarceration. On March 1, 2019, the DHHR filed a motion to terminate petitioner's parental rights, arguing that "[a]s a result of his drug use while under [c]ourt supervision and failure to enter an [inpatient] drug rehabilitation program [petitioner] was remanded to DOC custody to serve the remainder of his felony sentence." Further, it argued that petitioner failed to comply with drug screening after his release from custody and was given ample warnings regarding his noncompliance.

On March 15, 2019, the circuit court held a final dispositional hearing. In arguing against petitioner's motion for an improvement period, the DHHR presented evidence that petitioner was called to drug screen twenty-two times from January of 2019 to March of 2019, but only appeared to screen six times. Of the six screens, he tested positive once for tetrahydrocannabinol ("THC"). Petitioner had three missed screens excused for his work, and the remaining thirteen screens were "no show." Ultimately, the drug-screening center removed petitioner as a participant for his excessive noncompliance. Further, the DHHR worker testified that the multidisciplinary team recommended that petitioner attend inpatient drug treatment, but he never enrolled. The DHHR also referred petitioner to an intensive outpatient drug treatment program, but he never enrolled. Also, the DHHR worker testified that petitioner had not visited with the children since his release from incarceration due to his noncompliance with drug screening. In conclusion, the DHHR opposed petitioner's motion for an improvement period because he had done nothing throughout the case to indicate that he would successfully complete one. The circuit court took petitioner's motion for an improvement period under advisement.

In light of the testimony at the dispositional hearing that petitioner did not comply with the conditions of drug screening, had not attempted to enroll in drug treatment, and had not exercised visitations with the children, the circuit court found that petitioner was not likely to participate in services to remedy the abuse and neglect in the home and denied his motion for a post-adjudicatory improvement period. Further, the circuit court found that petitioner denied having a substance abuse problem or that the children should have been removed by the DHHR, thus failing to accept full responsibility. Based upon these findings, the circuit court concluded that it was in the best interests of the children to terminate petitioner's parental rights. The circuit court entered an order reflecting its decision on April 26, 2019. Petitioner now appeals from this order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period when the evidence below demonstrated that he would have fully complied and participated in an improvement period. In support, petitioner argues that his employment made it difficult to regularly drug screen, as he often worked far from the drug-screening center, which scheduled screenings during his work hours. Further, petitioner argues that he needed employment to provide for his family, but the circuit court punished him for working. Lastly, petitioner acknowledges that it is his responsibility to complete the terms and conditions of an improvement period, but argues that he would have fully participated had the DHHR, the guardian, and the circuit court been willing to accommodate him regarding his employment. Upon review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of

---

[2]The parental rights of both parents were terminated during the proceedings below. According to the parties, the permanency plan for the children is adoption in their current foster placement.

abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Finally, "the circuit court has the discretion to deny an improvement period when no improvement is likely." *In re Tonjia M.,* 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner acknowledges his failure to comply with drug screens, he fails to address the circuit court's finding that he did not accept responsibility for the children's removal from his home due to his substance abuse. In order to remedy the issues of abuse and/or neglect, petitioner must acknowledge that his conduct constituted abuse and/or neglect. Here, petitioner denied having a substance abuse problem at the final dispositional hearing despite his positive drug screens, drug-related criminal conviction, and psychological evaluation findings to the contrary. Without an acknowledgment of his abuse and/or neglect, petitioner was not entitled to an improvement period. *See Kaitlyn P.*, 225 W. Va. at 127, 690 S.E.2d at 135 (holding that "[a]bsent the parents' acknowledgment of the abuse, the requirement for granting a post-adjudicatory improvement period . . . was not satisfied").

Additionally, petitioner's continuous unexcused missed screens meant he could not exercise visitation. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citation omitted); *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Here, petitioner did not regularly screen, and did not otherwise attempt to contact the DHHR regarding his work schedule. As a result of his noncompliance with drug screening, petitioner could not exercise visitation with the children. In light of the findings above, the circuit court reasonably found that petitioner was unlikely to fully participate in an improvement period and we find no error in the circuit court's denial of his motion.

Further, we find no error in the circuit court's termination of petitioner's parental rights. Petitioner reiterates his argument that the circuit court erred in not allowing him an opportunity to remediate the issues that led to the removal of his children through a post-adjudicatory improvement period. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Further, West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[.]

The evidence discussed above supports the termination of petitioner's parental rights, as he failed to seek drug treatment, accept responsibility for his substance abuse issues, or comply with drug screenings and supervised visitations. Based on this evidence, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Additionally, due to petitioner's lack of participation with supervised visitation with the children, it is clear that the termination of his parental rights was in the children's best interest. Further, termination of his parental rights was necessary to establish permanency for the children. Therefore, the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 26, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins

**DISQUALIFIED:**

Justice John A. Hutchison